# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

FLORIDA RISING TOGETHER,
et al.,

*Plaintiffs*,

    v.

No. 4:21-cv-201-AW-MJF

LAUREL M. LEE, in her official capacity
as Florida Secretary of State, et al.,

*Defendants*,

REPUBLICAN NATIONAL
COMMITTEE and NATIONAL
REPUBLICAN SENATORIAL
COMMITTEE,

*Proposed Intervenor-Defendants.*

# MEMORANDUM OF LAW IN SUPPORT OF
# MOTION TO INTERVENE

This Court should allow Movants—the Republican National Committee and National Republican Senatorial Committee—to intervene as defendants in this case. As the Democratic Party recently observed, "political parties usually have good cause to intervene in disputes over election rules." *Issa v. Newsom*, Doc. 23 at 2, No. 2:20-cv-1044 (E.D. Cal. June 8, 2020). That is why, in recent litigation challenging a variety of state election laws, the Republican Party was virtually always granted intervention.[1] This Court, too, in recent election cycles, has always allowed the Republican Party to intervene—including twice over the past week in highly related cases.[2] It should do the same here for two independent reasons.

---

[1] *See, e.g.*, *Black Voters Matter Fund v. Raffensperger*, Doc. 42, No. 1:20-cv-4869 (N.D. Ga. Dec. 9, 2020) (granting intervention to the RNC and Georgia Republican Party); *All. for Retired Am.'s v. Dunlap*, No. CV-20-95 (Me. Super. Ct. Aug. 21, 2020) (granting intervention to the RNC, NRSC, and Republican Party of Maine); *Mi Familia Vota v. Hobbs*, Doc. 25, No. 2:20-cv-1903 (D. Ariz. June 26, 2020) (granting intervention to the RNC and NRSC); *Ariz. Democratic Party v. Hobbs*, Doc. 60, No. 2:20-cv-1143 (D. Ariz. June 26, 2020) (granting intervention to the RNC and Arizona Republican Party); *Swenson v. Bostelmann*, Doc. 38, No. 20-cv-459 (W.D. Wis. June 23, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Edwards v. Vos*, Doc. 27, No. 20-cv-340 (W.D. Wis. June 23, 2020) (same); *League of Women Voters of Minn. Ed. Fund v. Simon*, Doc. 52, No. 20-cv-1205 (D. Minn. June 23, 2020) (granting intervention to the RNC and Republican Party of Minnesota); *Priorities USA v. Nessel*, 2020 WL 2615504, at *5 (E.D. Mich. May 22, 2020) (granting intervention to the RNC and Republican Party of Michigan); *Thomas v. Andino*, 2020 WL 2306615, at *4 (D.S.C. May 8, 2020) (granting intervention to the South Carolina Republican Party); *Corona v. Cegavske*, Order Granting Mot. to Intervene, No. CV 20-OC-644-1B (Nev. 1st Jud. Dist. Ct. Apr. 30, 2020) (granting intervention to the RNC and Nevada Republican Party); *League of Women Voters of Va. v. Va. State Bd. of Elections*, Doc. 57, No. 6:20-cv-24-NKM (W.D. Va. Apr. 29, 2020) (granting intervention to the Republican Party of Virginia); *Democratic Nat'l Comm. v. Bostelmann*, 2020 WL 1505640, at *5 (W.D. Wis. Mar. 28, 2020) (granting intervention to the RNC and Republican Party of Wisconsin); *Gear v. Knudson*, Doc. 58, No. 3:20-cv-278 (W.D. Wis. Mar. 31, 2020) (same); *Lewis v. Knudson*, Doc. 63, No. 3:20-cv-284 (W.D. Wis. Mar. 31, 2020) (same).

[2] *See, e.g.*, *Fla. State Conf. of Branches and Youth Units of the NAACP v. Lee*, Doc. 43, No. 4:21-cv-187-MW-MAF (N.D. Fla. June 8, 2021); *League of Women Voters of Fla. v. Lee*, Doc. 72, No. 4:21-cv-186-MW-MAF (N.D. Fla. June 4, 2021); *Nielsen v. DeSantis*, No. 4:20-cv-236-RH-MJF, 2020 WL

**First**, Movants satisfy the criteria for intervention as of right under Rule 24(a)(2). This motion is timely; Plaintiffs just filed their complaint, most defendants haven't entered an appearance, this litigation is still in its infancy, and no party will possibly be prejudiced. Movants also have a clear interest in protecting their members, candidates, voters, and resources from Plaintiffs' attempt to upend Florida's duly enacted rules. Finally, no other party adequately represents Movants' interests. Adequacy is not a demanding standard, and the State Defendants do not share Movants' distinct interests in protecting their resources and helping Republican candidates and voters.

**Second**, and alternatively, the Court should grant Movants permissive intervention under Rule 24(b). Again, this motion is timely, and intervention will result in no delay or prejudice. Movants' defenses also share common questions of law and fact with the existing parties' defenses. In fact, the "Republican" Party is referenced several times in the complaint. *See* Compl. (Doc. 1) ¶¶77, 84. This Court's resolution of the important questions here will have significant implications for Movants—and their members, candidates, voters, and resources—as Movants work to ensure that Republican candidates and voters can participate in fair and orderly elections.

---

6589656 (N.D. Fla. May 28, 2020) (granting intervention to the RNC, NRCC, and Republican Party of Florida); *VoteVets Action Fund v. Detzner*, Doc. 16, No. 4:18-cv-524-MW-CAS (N.D. Fla. Nov. 11, 2018) (granting intervention to the NRSC); *Democratic Exec. Comm. of Fla. v. Detzner*, No. 4:18-cv-520-MW-MJF (N.D. Fla. Nov. 9, 2018) (granting intervention to the NRSC); *Jacobson v. Detzner*, Doc. 36, No. 4:18-cv-262-MW-CAS, 2018 WL 10509488 (N.D. Fla. July 1, 2018) (granting intervention to the NRSC and RGA); *Fla. Democratic Party v. Scott*, Doc. 49, No. 4:16-cv-626-MW-CAS (N.D. Fla. Oct. 19, 2016) (granting intervention to Republican Party of Florida).

Whether under Rule 24(a)(2) or (b), Movants should be allowed to intervene as defendants. While Plaintiffs oppose this motion, Secretary Lee and the Florida Attorney General's office have no objection to Movants intervening in this case, and Defendant Latimer takes no position. The other Defendants have not yet appeared.

## INTERESTS OF PROPOSED INTERVENORS

Movants are two political committees who support Republicans in Florida. The RNC is a national committee that manages the Party's business at the national level, supports Republican candidates for public office at all levels, coordinates fundraising and election strategy, and develops and promotes the national Republican platform. The RNC's membership consists of the party chair and national committeeman and national committeewoman for each State and territory, including three representatives from Florida who are registered voters in Florida.

The NRSC is a national political committee that works to elect Republicans to the U.S. Senate. The NRSC conducts fundraising and assists candidates with communication, strategy, and planning. Its membership includes every elected Republican member of the Senate, including both U.S. senators from Florida, both of whom are registered voters in Florida.

Both Movants have interests—their own and those of their members, candidates, and voters—in the rules governing Florida's elections. These interests are heightened given Florida's crucial elections in 2022 for U.S. Senate, U.S. House, Governor, Cabinet, and all 160 seats in the Florida Senate and Florida House.

# ARGUMENT

## I.     Movants are entitled to intervene as of right.

Rule 24 is "'construed liberally'" with "'doubts resolved in favor of the proposed intervenor.'" *Adams Offshore, Ltd. v. Con-Dive, LLC*, 2009 WL 2971103, at *1 (S.D. Ala. 2009); *accord Fed. Sav. & Loan Ins. Corp. v. Falls Chase Special Taxing Dist.*, 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all related disputes in a single action."). Under Rule 24(a)(2), this Court must grant intervention as of right if four things are true: the motion is timely; movants have a legally protected interest in this action; this action may impair or impede that interest; and no existing party adequately represents Movants' interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989). All four are true here.

### A.     The motion is timely.

This Court determines timeliness by considering four factors: any delay in filing after the movant discovered its interest in the case; any prejudice to the existing parties from that delay; prejudice to the movant from denying intervention; and any unusual circumstances. *Id.* The convenience of the parties is not a factor. *Clark v. Putnam Cty.*, 168 F.3d 458, 462 (11th Cir. 1999). All four factors favor Movants.

Movants filed this motion quickly—a few weeks after Plaintiffs sued, and before most Defendants even entered appearances. Movants hardly could have moved faster than they did. Much later motions have been declared timely. *See e.g.*, *North Dakota v. Heydinger*, 288 F.R.D. 423, 429 (D. Minn. 2012) (motion filed one year after answer);

*Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th Cir. 1995) (motion filed four months after complaint); *Uesugi Farms, Inc. v. Michael J. Navilio & Son, Inc.*, 2015 WL 3962007, at *2 (N.D. Ill. June 25, 2015) (motions filed 4-6 weeks after complaint).

Nor will Movants' intervention prejudice the parties. This litigation has only just begun. No parties have filed responsive pleadings and this Court has not decided any dispositive motions. But if Movants are not allowed to intervene, their interests could be irreparably harmed by an order overriding Florida's election rules, which could undermine the integrity of Florida's elections. And there are no unusual circumstances at play. This motion is timely.

### B.   Movants have protected interests in this action.

As Republican Party organizations who represent members, candidates, and voters in every county in Florida, Movants have "'direct, substantial, legally protectible interest[s] in the proceeding.'" *Chiles*, 865 F.2d at 1213-14. Specifically, Movants want Republican voters to vote, Republican candidates to win, and Republican resources to be spent wisely and not wasted on diversions. These interests "are routinely found to constitute significant protectable interests" under Rule 24. *Issa v. Newsom*, 2020 WL 3074351, at *3 (E.D. Cal. 2020); *see, e.g., Siegel v. LePore*, 234 F.3d 1163, 1169 n.1 (11th Cir. 2001); *Trinsey v. Pennsylvania*, 941 F.2d 224, 226 (3d Cir. 1991); *Anderson v. Babb*, 632 F.2d 300, 304 (4th Cir. 1980). Given their inherent and intense interest in elections, usually "[n]o one disputes" that political parties "meet the impaired interest requirement for intervention as of right." *Citizens United v. Gessler*, 2014 WL 4549001, *2 (D. Col.

5

Sept. 15, 2014). That is certainly true where, as here, "changes in voting procedures could affect candidates running as Republicans and voters who [are] members of the … Republican Party." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, *2 (S.D. Ohio Aug. 26, 2005); *see id.* (under these circumstances, "there [was] no dispute that the Ohio Republican Party had an interest in the subject matter of this case").

These direct harms are not an "indirect impact" on Movants' general "economic interest." *Cf. Georgia v. U.S. Army Corps of Eng'rs*, 302 F.3d 1242, 1251 (11th Cir. 2002). Encouraging voter participation and winning elections are not "economic" at all. And courts routinely recognize that preventing diversions of resources away from an organization's activities is a legitimate "interest" under Rule 24(a)(2). *E.g.*, *Issa*, 2020 WL 3074351, at *3; *Bldg. & Realty Inst. of Westchester & Putnam Ctys., Inc. v. New York*, 2020 WL 5658703, at *11 (S.D.N.Y. 2020). The Democratic Party has demonstrated this persuasively in other election law cases. *See Wood v. Raffensperger*, Doc. 12 at 8-9, No. 1:20-cv-5018-ELR (N.D. Ga. Dec. 11, 2020); *Ga. Republican Party, Inc. v. Raffensperger*, Doc. 8 at 17-19, No. 1:20-cv-4651-SDG (N.D. Ga. Nov. 18, 2020).

Nor are Movants' interests "generalized" or shared by all Floridians. Not all Floridians have an interest in electing *Republicans* or conserving the resources of the *Republican Party*. As the Democratic Party has explained, Movants "have specific interests and concerns—from their overall electoral prospects to the most efficient use of their limited resources—that neither Defendants nor any other party in this lawsuit share." *Wood v. Raffensperger*, Doc. 13 at 16, No. 1:20-cv-5155-TCB (N.D. Ga. Dec. 21, 2020).

Moreover, Rule 24(a)(2) does not require a movant's interest to be "unique." *Citizens United*, 2014 WL 4549001, at *2 n.1. It requires "an interest that is *independent of* an existing party's, not *different from* an existing party's." *Planned Parenthood of Wis., Inc. v. Kaul*, 942 F.3d 793, 806 (7th Cir. 2019) (Sykes, J., concurring); *accord id.* at 798 (majority op.). If voter participation and resource diversion are not too generalized to give Plaintiffs standing, *see* Compl. ¶¶20-42, then they are not too generalized to justify Movants' intervention, *see Meek*, 985 F.2d at 1480 (rejecting the argument "that the intervenors had only nonjusticiable generalized grievances simply because they asserted interests widely shared by others," and noting that, "[i]f we accepted such an argument, we would be forced to conclude that most of the plaintiffs also lack standing").

Simply put, "'in cases challenging … statutory schemes as unconstitutional or as improperly interpreted and applied, … the interests of those who are governed by those schemes are sufficient to support intervention.'" *Chiles*, 865 F.2d at 1214. Because Movants' candidates will "actively seek [election or] reelection in contests governed by the challenged rules," and Movants' voters will vote in them, Movants have an interest in "demand[ing] adherence" to Florida's rules. *Shays v. FEC*, 414 F.3d 76, 88 (D.C. Cir. 2005).[3]

---

[3] Some of Movants' authorities discuss Article III standing, not the "interest" requirement of Rule 24(a)(2). But as the Democratic Party has pointed out, standing cases are relevant in this context because "Article III standing … goes *beyond* the requirement needed for intervention under Rule 24(a)(2)." *Ga. Republican Party v. Raffensperger*, Doc. 29 at 7-8, No. 2:20-cv-135 (S.D. Ga. Dec. 18, 2020) (emphasis added). In the Eleventh Circuit, "a movant who shows standing is deemed to have a sufficiently substantial interest to intervene." *Meek v. Metro. Dade Cty.*, 985 F.2d 1471, 1480 (11th Cir. 1993).

### C.     This action threatens to impair Movants' interests.

Movants are "so situated that disposing of [this] action *may* as a practical matter impair or impede [their] ability to protect [their] interest." Fed. R. Civ. P. 24(a)(2) (emphasis added). Movants "do not need to establish that their interests *will* be impaired," "only that the disposition of the action 'may' impair or impede their ability to protect their interests." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014). This inquiry is "flexible." *Chiles*, 865 F.2d at 1213-14. The language of Rule 24 is "obviously designed to liberalize the right to intervene in federal actions." *Nuesse v. Camp*, 385 F.2d 694, 701 (D.C. Cir. 1967).

Here, Movants' interests will "suffer if the Government were to lose this case, or to settle it against [Movants'] interests." *Mausolf v. Babbitt*, 85 F.3d 1295, 1302-03 (8th Cir. 1996). Laws like the one challenged here are designed to serve "the integrity of [the] election process" and the "orderly administration" of elections. *Eu v. San Fran. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 231 (1989); *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 196 (2008) (op. of Stevens, J.). An adverse decision thus would not only undercut democratically enacted laws that protect voters and candidates (including Movants' members), but it would also change the "structur[e] of th[e] competitive environment" and "fundamentally alter the environment in which [Movants] defend their concrete interests (e.g. their interest in … winning [election or] reelection)." *Shays*, 414 F.3d at 85-86. These changes would confuse voters and undermine confidence in the electoral process, *see Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006), potentially making it less

likely that Movants' voters will vote, *Crawford*, 553 U.S. at 197; *Black Voters Matter*, *supra* at 5. And these changes would require Movants to spend substantial resources fighting confusion and galvanizing participation. *Crawford*, 553 U.S. at 197; *Pavek v. Simon*, 2020 WL 3183249, at *10 (D. Minn. June 15, 2020).

Movants' concerns are magnified by the likelihood that such an order would come shortly before the 2022 election. *See Purcell*, 549 U.S. at 4-5. While Chapter 2021-11, Laws of Florida ("SB 90") itself changed Florida's election laws, those changes were democratically enacted—not imposed by federal courts. *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1284 (11th Cir. 2020). Voters, candidates, campaigns, and election officials will be diligently studying and implementing SB 90 while this case is litigated and appealed. *See Democratic Nat'l Comm. v. Wis. State Legislature*, 141 S. Ct. 28, 31 (2020) (Kavanaugh, J., concurring in denial of application to vacate stay). The whiplash from a "conflicting" court order, particularly as the election "draws closer," could only "result in voter confusion and consequent incentive to remain away from the polls." *Purcell*, 549 U.S. at 4-5.

At this stage, this Court cannot credit Plaintiffs' assertions that SB 90 will "suppress" votes, is discriminatory, or itself confuses voters. When resolving a motion to intervene, courts cannot "assume … that Plaintiffs will ultimately prevail on the merits" or prejudge "the ultimate merits of the [defenses] which the intervenor wishes to assert." *Pavek*, 2020 WL 3960252, at *3; *SEC v. Price*, 2014 WL 11858151, at *2 (N.D. Ga. 2014). Thus, the question for this Court is not whether Movants have an interest in

maintaining an "unconstitutional" law. The question is whether Movants have an interest in preventing a federal court from enjoining a *valid* law that *increases* voter confidence and *promotes* voting. *Clark*, 168 F.3d at 462. They do.

Any stare decisis effect of an adverse ruling would further jeopardize Movants' interests. *Chiles*, 865 F.2d at 1214. Similar groups have recently challenged other election-integrity measures in Iowa and Georgia, for example. A ruling in Plaintiffs' favor here thus could undermine Movants' ability to assert their rights and interests in those cases and in future cases across the country. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (holding that the "persuasive effects" of one court's opinion on other courts can be significant and thus warrant intervention).

In short, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Brumfield*, 749 F.3d at 345. So the "best" course—and the one that Rule 24 "implements"—is to give "all parties with a real stake in a controversy … an opportunity to be heard" in this suit. *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 130 (D.C. Cir. 1972). That includes Movants.

### D.   The existing parties do not adequately represent Movants' interests.

Finally, Movants are not adequately represented by Defendants. This requirement is satisfied "if the proposed intervenor shows that representation of his interest *may be* inadequate." *Chiles*, 865 F.2d at 1214 (cleaned up; emphasis added). The required

showing of inadequacy is "'minimal'" and "not difficult." *Clark*, 168 F.3d at 461. Movants "'should be allowed to intervene unless it is clear that [the current parties] will provide adequate representation.'" *Chiles*, 865 F.2d at 1214. While adequacy is sometimes presumed when movants have the same objective as one of the parties, "[t]his presumption is weak and can be overcome if the [movants] present some evidence to the contrary." *Stone v. First Union Corp.*, 371 F.3d 1305, 1311-12 (11th Cir. 2004). "Some evidence" includes a "difference in interests." *Id.*

As then-Judge Garland has explained, courts "often conclude[] that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). "[T]he government's representation of the public interest generally cannot be assumed to be identical to the individual parochial interest of a [private movant] merely because both entities occupy the same posture in the litigation." *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001). Here, too, Defendants necessarily represent "the public interest," rather than Movants' "particular interest[s]" in protecting their resources and the rights of their candidates and voters. *Coal. of Ariz./N.M. Counties for Stable Economic Growth v. DOI*, 100 F.3d 837, 845 (10th Cir. 1996).

This tension is stark in the context of elections. Defendants have no interest in the election of particular candidates or the mobilization of particular voters, or the costs associated with either. Instead, state officials, acting on behalf of all Florida citizens and the State itself, must consider "a range of interests likely to diverge from those of the

intervenors." *Meek*, 985 F.2d at 1478. Those interests include "the expense of defending the current [laws] out of [state] coffers," "the social and political divisiveness of the election issue," "their own desires to remain politically popular and effective leaders," and even the interests of Plaintiffs. *Clark*, 168 F.3d at 461; *Meek*, 985 F.2d at 1478. All of this makes Defendants less likely to make the same arguments, less likely to exhaust all appellate options, and more likely to settle. *Clark*, 168 F.3d at 461-62. To quote the Democratic Party again, inadequacy is a "'light'" burden here because Defendants' "'views are necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it.'" *Ga. Republican Party*, *supra* at 9-10 (quoting *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998)).

For similar reasons, Movants and Defendants have fundamentally different interests. The fact that they "both believe [Plaintiffs' relief] should be denied … does not mean that [they] have identical positions or interests." *U.S. Army Corps*, 302 F.3d at 1259. On the contrary, Defendants are concerned with "properly administer[ing Florida's] election laws," while Movants "are concerned with ensuring their party members and the voters they represent have the opportunity to vote," "advancing their overall electoral prospects," and "allocating their limited resources to inform voters about the election procedures." *Issa*, 2020 WL 3074351, at *3. This "difference in interests" between Movants and Defendants is "sufficient to overcome the weak presumption of adequate representation." *Stone*, 371 F.3d at 1312.

Additionally, Secretary Lee—the only Defendant charged with the responsibility to "maintain uniformity with the interpretation and implementation" of state election laws, as the chief election officer of the State—does not oppose intervention. §97.012(1), Fla. Stat. As many courts have stressed, the State's "silence on any intent to defend [the movant's] special interests is deafening." *Conservation Law Found. of N.E., Inc. v. Mosbacher*, 966 F.2d 39, 44 (1st Cir. 1992); *accord Utahns for Better Transp. v. DOT*, 295 F.3d 1111, 1117 (10th Cir. 2002) (same). Because the State "nowhere argues . . . that it will adequately protect [Movants'] interests," Movants "have raised sufficient doubt concerning the adequacy of [its] representation." *U.S. House of Representatives v. Price*, 2017 WL 3271445, at *2 (D.C. Cir. 2017).

## II. Alternatively, Movants are entitled to permissive intervention.

Even if Movants were not entitled to intervene as of right under Rule 24(a), this Court should grant them permissive intervention under Rule 24(b). Exercising "broad" judicial discretion, courts can grant permissive intervention to "'anyone … who has a claim or defense that shares with the main action a common question of law or fact.'" *Jacobson*, 2018 WL 10509488, at *1. Courts also consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). If a court has doubts, "the most prudent and efficient course" is to allow permissive intervention. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians of Wis. v. United States*, 2002 WL 32350046, *3 (W.D. Wis. Nov. 20, 2002).

The requirements of Rule 24(b) are met here. Movants have filed a timely motion that will neither delay the case nor prejudice the parties. And Movants will raise defenses that share many common questions with the parties' claims and defenses. Plaintiffs allege that the challenged law is unconstitutional and must be enjoined. Movants will argue that the law is valid, that an injunction is unwarranted, and that Plaintiffs' desired relief would undermine Movants' interests. This obvious clash is why courts allow political parties to intervene in defense of state election laws. *See, e.g.*, *Swenson*, *supra* ("[T]he [RNC and Republican Party of Wisconsin] have a defense that shares common questions of law and fact with the main action; namely, they seek to defend the challenged election laws to protect their and their members' stated interests—among other things, interest in the integrity of Wisconsin's elections."); *Priorities USA*, 2020 WL 2615504, at *5 (granting permissive intervention where the RNC "demonstrate[d] that they seek to defend the constitutionality of Michigan's [election] laws, the same laws which the plaintiffs allege are unconstitutional").

Movants' intervention will not delay this litigation or prejudice anyone at all. Movants swiftly moved to intervene at this case's earliest stage, *see Black Voters Matter*, *supra* at 6, and their participation will add no delay beyond the norm for multiparty litigation. Movants also commit to complying with all deadlines that govern the parties, working to prevent duplicative briefing, and coordinating with the parties on discovery, "which is a promise" that undermines claims of undue delay, *Emerson Hall Assocs., LP v. Travelers Casualty Ins. Co. of Am.*, 2016 WL 223794, *2 (W.D. Wis. Jan. 19, 2016); *see Nielsen*, 2020

WL 6589656, at *1. Of course, "any introduction of an intervener in a case will necessitate its being permitted to actively participate, which will inevitably cause some 'delay,'" but that kind of prejudice or delay is irrelevant. Rule 24(b) is concerned with "*undu[e]* delay or prejudice," and "'[u]ndue' means not normal or appropriate." *Appleton v. Comm'r*, 430 F. App'x 135, 138 (3d Cir. 2011). And "it is this Court's experience that adding the [Republican Party] will not necessarily prejudice the original parties." *League of Women Voters of Fla.*, *supra*.

Allowing Movants to intervene will promote consistency and fairness in the law, as well as efficiency in this case. It will allow "the Court … to profit from a diversity of viewpoints as [Movants] illuminate the ultimate questions posed by the parties." *Franconia Minerals (US) LLC v. United States*, 319 F.R.D. 261, 268 (D. Minn. 2017). Any prejudice from granting intervention would be no greater than the prejudice from denying intervention. *See id.* ("'[D]enying [the Republican Party's] motion [will] open[] the door to delaying the adjudication of this case's merits for months,' while Proposed Intervenors appeal this Court's decision" (quoting *Jacobson*, 2018 WL 10509488, at *1)).

Notably, this Court can grant permissive intervention even if it concluded that Defendants adequately represent Movants' interests. *See, e.g.*, *id.* For starters, "Rule 24(b) does not have the same inadequate representation requirements that Rule 24(a)(2) does." *Black Voters Matter*, *supra* at 5. Permissive intervention does not require the intervenor to have an "interest" at all, let alone an interest that the parties inadequately represent. *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Eng'rs*, 101 F.3d 503, 509

(7th Cir. 1996); *Planned Parenthood of Wis.*, 942 F.3d at 801 n.4. Courts thus grant permissive intervention even when the movant is "completely and adequately represented," will merely "enhance[]" the government's defense, or will provide a "secondary voice in the action." *Ohio Democratic Party v. Blackwell*, 2005 WL 8162665, at *2 (S.D. Ohio Aug. 26, 2005); *100Reporters LLC v. DOJ*, 307 F.R.D. 269, 286 (D.D.C. 2014); *Ala. v. U.S. Dep't of Commerce*, 2018 WL 6570879, at *3 (N.D. Ala. 2018).

Even if courts could deny permissive intervention based on adequate representation, they should not do so when that question is a close call. Movants believe they have the better of the argument. *See supra* §I.D. At most, though, permissive intervention is warranted because "reasonable minds may differ over whether Florida's Secretary of State represents Proposed Intervenors' interests adequately." *Jacobson*, 2018 WL 10509488, at *1.

This Court should not consider whether to change the election rules in a crucial State without giving one of the two major political parties a seat at the table. To quote Judge Hinkle, Republican Party organizations "are not marginally affected individuals; they are substantial organizations with experienced attorneys who might well bring perspective that others miss or choose not to provide." *Nielsen*, 2020 WL 6589656, at *1. With respect, Movants have at least as much at stake in Florida's elections and at least as much expertise on the relevant issues as Plaintiffs or Defendants. The Republican Party has litigated these same constitutional and statutory issues in many cases across the country. Allowing Movants to intervene here would similarly serve "'the interest of

a full exposition of the issues.'" *South Carolina v. North Carolina*, 558 U.S. 256, 272 (2010); *accord Meek*, 985 F.2d at 1479 ("The substantial public interest at stake in the case is an unusual circumstance militating in favor of intervention.").

Movants have cited nearly twenty courts who granted the Republican Party intervention in virtually identical cases. *See supra* nn.1-2. Plaintiffs apparently believe all those courts abused their discretion. They did not. In fact, in the last cycle, Movants are aware of only two federal courts that denied the Republican Party intervention: *Common Cause R.I. v. Gorbea*, 2020 WL 4365608 (D.R.I. 2020); and *Democracy N.C. v. N.C. State Board of Elections*, 2020 WL 6591397 (M.D.N.C. 2020).[4]

These cases are not models to be followed. The first case, *Gorbea*, was largely reversed on appeal. *See* 970 F.3d 11, 17 (1st Cir. 2020) ("[A]s to the Republicans' status as intervenors in this case, the district court's order denying intervention is **reversed in part** …."). And the second case, *Democracy N.C.*, is a cautionary tale. That court denied the Republican Party intervention because it had already *granted* intervention to the leaders of the state senate and house, "both Republicans." 2020 WL 6591397, at *1-2. But when the court later granted a preliminary injunction, "no party … appealed." 2020 WL

---

[4] Movants are also aware of sporadic cases from other jurisdictions where courts denied intervention to *individual* voters, candidates, and officeholders—not the Republican Party itself. Those cases are probably bad law in the Eleventh Circuit. *See Meek*, 985 F.2d at 1480. Regardless, interventions by individuals—as opposed to party organizations who represent all such individuals at once—arguably present different concerns. *Cf. Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 259 (D.N.M. 2008) (citing the lack of a limiting principle with individuals because "[i]f [the court] lets one voter, or one legislator … intervene, it may need to let others"); *Ansley v. Warren*, 2016 WL 3647979, at *3 (W.D.N.C. 2016) (citing the difficulties of "additional government actors" purporting to speak for the state).

6058048, at *1 (M.D.N.C. 2020). The state defendants then used that injunction as a basis to unilaterally change state election laws. *See id.* at *2-4, *8-9. This required the Republican Party to file a *separate* lawsuit, which was transferred to the *Democracy N.C.* court anyway. 2020 WL 6591367, at *1 (M.D.N.C. 2020). That series of events was anything but an efficient use of judicial or party resources. *See United States v. City of Detroit*, 712 F.3d 925, 933 (6th Cir. 2013) (holding that courts abuse their discretion if they fail to consider "the potential prejudice resulting from complete denial of intervention: significant delay … from collateral challenges" brought by the failed intervenors).

## CONCLUSION

Movants respectfully ask this Court to grant their motion and let them intervene as defendants in this important case.

Dated: June 8, 2021                                 Respectfully submitted,

                                                    _ /s/ Daniel E. Nordby_____
Tyler Green*                                        Daniel E. Nordby
Cameron T. Norris*                                  Fla. Bar No. 14588
Steven C. Begakis*                                  Benjamin J. Gibson
Daniel Shapiro                                      Fla. Bar No. 58661
Fla. Bar No. 1011108                                George N. Meros, Jr.
CONSOVOY MCCARTHY PLLC                              Fla. Bar No. 263321
1600 Wilson Blvd., Ste. 700                         Amber Stoner Nunnally
Arlington, VA 22209                                 Fla. Bar No. 109281
(703) 243-9423                                      SHUTTS & BOWEN LLP
tyler@consovoymccarthy.com                          215 South Monroe Street, Suite 804
cam@consovoymccarthy.com                            Tallahassee, Florida 32301
steven@consovoymccarthy.com                         Tel: (850) 241-1717
daniel@consovoymccarthy.com                         dnordby@shutts.com
                                                    bgibson@shutts.com
                                                    gmeros@shutts.com
                                                    anunnally@shutts.com
                                                    mabramitis@shutts.com

*pro hac vice forthcoming

*Counsel for Proposed Intervenor-Defendants Republican National Committee and
National Republican Senatorial Committee*

19

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(F)

This document contains 5,000 words, excluding what can be excluded under the

Local Rules.

*/s/ Daniel E. Nordby*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1(B)

Counsel for Movants conferred with counsel for Plaintiffs and Defendants who

have appeared regarding this motion. Plaintiffs oppose the motion and intend to file

an opposition. Defendant Lee does not object to Movants' intervention. Defendant

Latimer takes no position. The other Defendants have not yet appeared.

*/s/ Daniel E. Nordby*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2021, I electronically filed this document with

the Clerk of the Court by using the CM/ECF system, which will serve all parties whose

counsel have entered appearances. Those parties who have not yet appeared will be

served via email.

*/s/ Daniel E. Nordby*