**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

FLORIDA RISING TOGETHER, et al.,

Plaintiffs,

v.

LAUREL M. LEE, et al.,

Defendants.

Case Nos. 4:21-cv-201-MW/MJF

**FLORIDA RISING PLAINTIFFS' OPPOSITION TO MOTION TO QUASH SUBPOENA FOR RULE 30(B)(6) DEPOSITION OF THE EXECUTIVE OFFICE OF THE GOVERNOR**

The Court should deny the Executive Office of the Governor's motion to quash the subpoena. The Governor's Office has not met its burden to establish the privileges or undue burdens it asserts. Under well-settled precedent, the legislative privilege is qualified and can be overcome where important federal interests are at stake. That standard is easily met here. In any event, most of the topics that are the subject of Plaintiffs' Rule 30(b)(6) notice do not even implicate the legislative privilege. The Governor's Office also invokes the deliberative process privilege, but that is even further afield: none of the topics implicate deliberative process, which is a privilege usually invoked to block the production of draft documents, and certainly not to preemptively block an entire deposition. Nor can the Governor's Office substantiate its burden argument. The motion should be denied.

**RELEVANT FACTUAL BACKGROUND**

Plaintiffs are challenging multiple provisions of Florida's Senate Bill 90 (S.B. 90), a law that imposes substantial and unjustifiable restrictions on the ability of eligible Floridians to vote and register to vote. As particularly relevant here, Plaintiffs assert that the Florida legislature

adopted many of these restrictions for racially discriminatory purposes, in violation of the Fourteenth and Fifteenth Amendments and Section 2 of the Voting Rights Act. *See* Am. Compl. ¶¶ 165–182 (Case No. 201, ECF 59).

Notwithstanding his public statements extolling the success of Florida's 2020 election, Governor DeSantis was a strong proponent of S.B. 90 and proposed several aspects of the bill that are subject to challenge, including limiting the use of drop boxes and making it more difficult to vote by mail. *See* Press Release, *Governor Ron DeSantis Highlights Proposed Legislation to Strengthen Election Integrity and Transparency Measures* (Feb. 19, 2021) (noting that, "today, Governor Ron DeSantis proposed new measures to safeguard the sanctity of Florida elections").[1] Document discovery shows that the Governor's Office instigated certain key components of the bill and closely monitored legislative developments, creating detailed tracking documents that compared the "Governor's" version of the bill to various iterations during the House and Senate committee process. *See, e.g.*, Ex. A.

For example, document discovery has shown that the Governor's Office was intimately involved in attempting to restrict the use of secure drop boxes during the November 2020 election. In October 2020, a senior lawyer in the Governor's office (who now serves as the Governor's Chief of Staff) drafted onerous guidance that eventually went out under the signature of the Secretary of State advising supervisors that, among other things, drop boxes had to be staffed by an employee of the supervisor's office or a law enforcement officer at all times, *i.e.*, 24/7 or whenever they were in operation. *See* Ex. B. These restrictions were a precursor to the provisions in S.B. 90 that largely ban 24/7 drop boxes entirely. Document discovery has also shown that a second lawyer, who served as General Counsel to the Governor's transition team,

[1] https://www.flgov.com/2021/02/19/governor-ron-desantis-highlights-proposed-legislation-to-strengthen-election-integrity-and-transparency-measures/

provided mark-ups and draft language on the bill (including on secure drop boxes) to Representative Ingoglia, the lead House sponsor. *See* Ex. C.

Following communications between the Governor's Office and counsel for the *League of Women Voters* counsel concerning service of subpoena, on October 6, 2021, Plaintiffs issued a Rule 30(b)(6) subpoena to the Governor's Office identifying 10 topics for an October 20, 2021 deposition. *See* ECF 220 ("Mot. to Quash" or "Mot.") Ex. 1. On October 14, 2021, Plaintiff served an amended notice identifying an 11th topic related to the University of Florida's attempted interference with Plaintiffs' prosecution of this case: the University informed three separate Plaintiffs' experts that that their work on this matter was not authorized because it would purportedly create a "conflict" with the "executive branch of the State of Florida." Mot. Ex. 2. As explained in more detail below, Plaintiffs had just learned about that interference a few days earlier. Plaintiffs thus noticed the following topics:

1. Each State interest, if any, that the Executive Office of the Governor believes or contends each of the Challenged Provisions serves, promotes, or advances, and all facts and evidence supporting a connection between the Challenged Provisions and the State interest(s).

2. The Executive Office of the Governor's statements and opinions concerning the conduct of the 2020 general elections in Florida.

3. The success or failure of the 2020 general election in Florida, and the Executive Office of the Governor's understanding of what contributed to that success or failure.

4. The Executive Office of the Governor's statements and opinions concerning Senate Bill 90, including any of its individual provisions; concerning actual or potential changes to Florida's election laws and policies since November 2020; or concerning the need for any such changes.

5. The role of the Executive Office of the Governor in drafting, discussing, negotiating and enacting Senate Bill 90.

6. All communications regarding Senate Bill 90 between the Executive Office of the Governor and the following individuals and entities: members of the Florida Legislature, the Florida Attorney General's Office, the Florida Department of State, any Florida Supervisor of Elections, the Florida Supervisors of Elections ("FSE"), Defendant-Intervenors, the National Republican Congressional Committee, any

Republican State or local officials, the Heritage Foundation, Heritage Action for America, and any of their employees, staff, contractors, consultants, advisors, agents, representatives, lobbyists, or anyone acting on their behalf.

7. Any analysis that the Executive Office of the Governor has conducted relating to or concerning the anticipated or actual effects of any of the Challenged Provisions on voting in Florida and any communications involving the Executive Office of the Governor regarding the anticipated or actual effects of any of the Challenged Provisions on voting in Florida.

8. Any analysis that the Executive Office of the Governor has conducted relating to or concerning the anticipated or actual costs of implementing any of the Challenged Provisions.

9. Any analysis that the Executive Office of the Governor has conducted relating to or concerning the need for or purpose of any of the Challenged Provisions.

10. The Executive Office of the Governor's collection and production of documents in response to the subpoena from League of Women Voters *et al.* in No. 21-cv-186, including but not limited to the sources of documents that were collected, the means by which such documents were searched and reviewed, and any sources of potentially responsive documents that were not collected, searched, and reviewed.

11. Communications with the State Board of Education, the Board of Governors of the State University System of Florida, the State University System of Florida, or any public university in Florida, including any board members, trustees, employees, staff, contractors, consultants, advisors, counsel, agents, representatives, or anyone acting on their behalf, concerning SB 90, litigation involving SB 90, or experts witnesses involved in litigation involving SB 90.

The Office of the Governor does not dispute in its motion to quash that the information Plaintiffs seek to discover is highly relevant to their claims in this case, including to the *Arlington Heights* analysis. To resolve Plaintiffs' claims, this Court will need to determine whether race was a "motivating" factor in SB 90's enactment. *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265-66 (1997); *see also* ECF 49-1 & 122-1 (Mot. to Dismiss) at 13 (acknowledging that *Arlington Heights* standard "governs all intent claims at issue here"). That will require "a sensitive inquiry into such circumstantial and direct evidence of [legislative] intent as may be available," including, among other things, the extent to which the Governor knew or intended S.B. 90 would have a racially discriminatory impact and the sequence of events leading up to the law's enactment. *See Arlington Heights*, 429 U.S. at 266.

Following service of the subpoena, on October 14, 2021 the Plaintiffs met and conferred with counsel for the Office of the Governor. Following that call, the Governor's counsel reported that while "we agree that several of the Topics likely do not implicate either privilege on their face . . . we are inclined to exert the legislative privilege and/or deliberative process privilege" because "we believe subsequent questioning beyond factual issues would be covered by privilege." Ex. D at 2. On October 21, the Office of the Governor nonetheless moved to quash the deposition subpoena in its entirety, arguing principally that the legislative privilege grants it an absolute evidentiary privilege in civil cases, but also invoking deliberative process privilege and an objection on the basis of burden. These objections should be overruled.

## LEGAL STANDARD

"The Federal Rules of Civil Procedure strongly favor full discovery whenever that is possible." *Odom v. Roberts*, 337 F.R.D. 359, 362 (N.D. Fla. 2020) (citing *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1189 (11th Cir. 2013)). In particular, "[t]he right to take depositions is a 'broad' one because depositions are such an important tool of discovery." *Id.* (citation omitted). That rule applies to "[d]epositions of parties and non-parties alike." *Id.* at 363 (citation omitted). "[I]n light of the importance of depositions, courts have stated that a 'party has a general right to compel any person to appear at a deposition.'" *Id.*

The party seeking a protective order "bears the burden of demonstrating the existence of good cause for such an order," which requires "showing specific prejudice or harm will result if no protective order is granted." *Id.* (citations omitted). And "the movant must meet this burden with a 'particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *Ekokotu v. Fed. Express Corp.*, 408 F. App'x 331, 336 (11th Cir. 2011) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

These rules fully apply to motions to quash based on privilege: the party "invoking the privilege . . .bear[s] the burden of proving its existence." *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987). "The burden of proof in demonstrating that compliance with the subpoenas requires the disclosure of privileged or protected information or that compliance presents an undue burden lies with the moving party," while the party issuing the subpoena has the burden of proving relevance. *Fadalla v. Life Auto Prods*, 258 F.R.D. 501, 504 (M.D. Fla. 2011) (citing *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir.2004)). Even where the party seeking to quash meets this burden, the court "must weigh factors such as relevance, the need of the party for the [discovery], the breadth of the [discovery] request, and the time period covered by the request against the burden imposed on the person ordered to produce the desired information." *Cytodyne Techs., Inc. v. Biogenic Techs., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003).

**ARGUMENT**

The Governor's Office has not met its burden to establish either that the subpoena requires the disclosure of privileged information or subjects the office to undue burden. The privileges asserted do not even arguably apply to eight of the eleven topics in the notice, and in any event are qualified and are outweighed given the circumstances in this case. And the Governor's Office has not submitted a declaration or any other evidence to meet its obligation to show that the subpoena imposes an undue burden.

## I. The Legislative Evidentiary Privilege Is Qualified and Does Not Preclude This Deposition

Plaintiffs do not dispute that the legislative privilege—when it applies at all—can apply to the Governor in limited circumstances, namely to the Governor's "actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d 1298, 1308 (11th Cir. 2015).

But that principle is of no help to the Governor's Office here, because contrary to the Governor's Office's argument (Mot. 7) the legislative privilege is not "absolute" in civil cases, and is overcome in this case. Moreover, even if the legislative privilege did apply in this case, many of the 30(b)(6) topics simply do not implicate legislative privilege, as the Governor's counsel conceded on October 14 and October 18, *see* Ex. D, so the deposition must go forward at least as to those topics.

### A. Legislative Privilege Is Qualified, Not Absolute, and It Is Overcome in this Case

The Governor's Office argues that legislative privilege is absolute in civil cases, relying on the same authority that the legislators relied on in their motion to quash filed a day earlier (ECF 217). Because Plaintiffs presume that the Court will be deciding these motions contemporaneously, Plaintiffs incorporate by reference their opposition filed yesterday to the legislators' motion to quash, which explains in detail why legislative privilege is (i) not absolute, ECF 228 at 4-15, and (ii) should be overcome in cases involving allegations of intentional racial discrimination, especially in the voting rights context, *id.* at 15-21.

Just as with Plaintiffs' subpoenas to the legislators, the important federal interests at stake here and Plaintiffs' strong interest in obtaining testimony from the Governor's Office outweighs legislative privilege. The Governor's Office admits that the evidence Plaintiffs seek will be highly relevant. The Governor's Office does not contend that a deposition here would chill further gubernatorial involvement in the legislative process, much less in any unusual or unique way. The Governor's Office's sole argument as to why the privilege, if qualified, should not be overcome is that "Plaintiffs have ample avenues for potentially obtaining relevant information from discovery requests and depositions of the Secretary of State's Office, the State's Supervisors of Elections, and the Republican Intervenors; and production of public records from

the Florida Legislature and Governor's Office." Mot. 10. This argument has no merit. The Governor's Office actually produced only a small number of documents, and in any event, documents are not a substitute for depositions. *See generally Odom*, 337 F.R.D. at 362 ("[t]he right to take depositions is a 'broad' one because depositions are such an important tool of discovery"); *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962) ("where motive and intent play leading roles," key witnesses should be "present and subject to cross-examination" so that "their credibility . . . can be appraised"); *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 30 (2d Cir. 2002) ("[T]estimony is especially important . . . where the factfinder's evaluation of witnesses' credibility is central to the resolution of the issues.").

Moreover, the mere fact that *other* entities may have relevant information does not mean the Governor's Office should be shielded from providing indisputably relevant information. Here, given the Governor's Office's substantial involvement in S.B. 90, evidence from the Governor's Office is likely to be highly probative of core issues in the case, including not just direct evidence of intent but also evidence about the need (or lack thereof) for various provisions in S.B. 90. Plaintiffs, for example, seek to explore the information available to the Governor's Office about the potential impact of SB 90, in order to assess both "the foreseeability of the [law's] disparate impact" and the extent of the Governor's Office's "knowledge of that impact." *Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1321-22 (11th Cir. 2021).

### B. Legislative Privilege Does Not Apply to Eight of the Eleven Topics in the Notice

Even if the Court were to conclude that legislative privilege should not be overcome in this case, that still would not support the Governor's Office's motion to quash the subpoena in its entirety. The Governor's Office concedes in its motion that Topics 2 and 3, which relate to the 2020 election in Florida, on their face do not implicate any legislative privilege. The Governor's

Office nonetheless argues that "the only conceivable relevance of the Topics to this case stems from the questions that aim to connect the dots from a successful election to the need for election reform package." Mot. 7. But the legislative privilege does not prohibit Plaintiffs from eliciting information about *non-legislative activities* just because that information might be helpful in proving intent. The fact that the questions to the Governor's Office might demonstrate that the office was aware of no fraud in connection with drop boxes in the 2020 elections—and that some other pretextual purpose motivating S.B. 90's restrictions on drop boxes may be inferred from that fact—does not transform the original question into one protected by legislative privilege. On the Governor's Office's theory, no plaintiff could ever obtain *any* information relevant to intent. As the Supreme Court has noted, a "trier of fact can reasonably infer from the falsity of the explanation that the [Defendants are] dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 147 (2000). Plaintiffs are clearly entitled to question the Governor's Office about activity pre-dating the S.B. 90 effort.

Topics 1, 7, and 8 also are not covered by the qualified legislative privilege. Legislative privilege only applies to a governor when the governor is acting in a legislative capacity—to his "actions in the proposal, formulation, and passage of legislation." *In re Hubbard*, 803 F.3d at 1308. It does not shield the Governor's Office from discovery on anything having to do with state law merely because the law had to go through the legislature. The Governor also has responsibilities with respect to state law in his capacity as the chief executive officer of the State of Florida, tasked with enforcing and applying state law. Fla. Const. art. IV, sec. 1(a) ("The governor shall take care that the laws be faithfully executed…"). Topic 1 asks about state interests that the government official tasked with overseeing the enforcement of S.B. 90 believes support that enforcement, and facts and evidence relating to those state interests. That is a

standard question in any litigation involving a state law that is challenged as unconstitutional, and does not ask the Governor's Office to disclose anything about the Governor's role in proposing, formulating, or passing the legislation. And Topics 7-8 ask about the Governor's Office's analysis of the effects of S.B. 90 or the costs associated with S.B. 90, topics that concern the Governor's role in administering and enforcing the law, not passing the law. Given that the Governor's office played a significant non-legislative role in interpreting pre-S.B. 90 law related to drop boxes and coordinating with the Secretary of State's Office to provide direction to Supervisors, Ex. B, it is not credible to argue that questions about the effects or costs of S.B. 90 go to the Governor's role as legislator. *See also* Fla. Const. art. IV, sec. 1(a) ("The governor shall be the chief administrative officer of the state responsible for the planning and budgeting for the state.").

Topic 6 concerns communications with third parties about S.B. 90. If the Court concludes that legislative privilege applies here and is not overcome, that would only preclude questioning about one subset of the communications covered in Topic 6. Plaintiffs would agree under that circumstance not to ask the Governor's Office about its communications relating to the drafting or passage of S.B. 90 with members of the Florida legislature. But none of the rest of Topic 6—which relates to communications about S.B. 90 with third-party non-legislators (such as the Intervenors or the Heritage Foundation)—is protected by the legislative privilege. The Governor's Office bears the burden of substantiating the privilege it asserts, *In re Grand Jury Investigation*, 842 F.2d 1223, 1225 (11th Cir. 1987), but it offers no evidence or argument that every conversation it had with non-legislator third parties that touched on SB 90 was a "legislative" activity. The Governor's Office's discussions with third party Heritage Action, for example, are political activities. They do not on their face involve the "sphere of legislative

activity." *Hubbard*, 803 F.3d at 1308. In a decision that the Eleventh Circuit cited with approval in *Hubbard*, the Third Circuit explained that a governor "act[s] in a legislative capacity" only when he "advocate[s] bills to the legislature." *Baraka v. McGreevey*, 481 F.3d 187, 196 (3d Cir. 2007). Whatever assumption may be appropriate with actual legislators, it is inappropriate to simply assume that everything the Governor does involving a state law is covered by privilege.

Topic 10, which relates to the Governor's Office's document production, also does not implicate the legislative privilege.

Nor is Topic 11, which relates to communications with Florida's public university system, even arguably barred by legislative privilege. As background, during the week of October 10, 2021, in the midst of expert discovery in this case, Plaintiffs' counsel learned for the first time that the University of Florida had advised one of Plaintiffs' experts (University of Florida professor Dan Smith) and subsequently two others (professors Michael McDonald and Sharon Austin) that they were not authorized to serve as experts on behalf of Plaintiffs in this matter as part of their "outside activities." *See* Ex. E. The University told Dr. Smith that "outside activities that may pose a conflict of interest to the executive branch of the State of Florida create a conflict for the University of Florida," and provided similar explanations for Dr. McDonald ("As UF is a state actor, litigation against the state is adverse to UF's interests.") and Dr. Austin (same). *See* Ex. E. Because University of Florida professors (including Dr. Smith) have historically been approved to serve as experts in numerous other cases both on behalf of and adverse to the State of Florida before, this rationale is obviously pretextual, and appears to be S.B. 90 specific.

As Plaintiffs advised the Governor's Office during an October 14 meet and confer about the deposition, Plaintiffs intend to ask the Governor's Office—which leads the "executive branch

of the state of Florida"—whether it played a role in this decision. Plaintiffs are legitimately concerned that prosecution of this litigation may be impeded by the efforts of "the executive branch of the State of Florida" to prevent testimony from or intimidate Plaintiffs' experts on key issues—including racially discriminatory intent and racially disparate impact—and are clearly entitled to explore these issues in discovery. The Governor's Office's assertion that the University of Florida's decisions relating to the participation of its employees in this litigation implicates the "legislative privilege" is nonsensical.

**II. Deliberative Process Privilege Does Not Apply**

The Governor's Office alternatively argues that the subpoena should be quashed because the deliberative process privilege covers "much" of the "information sought." Again, the Governor's Office has not and cannot meet its burden of establishing a valid deliberative process privilege over oral testimony. The deliberative process privilege only covers material "prepared in order to assist an agency decision maker in arriving at his decision." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1263 (11th Cir. 2008). "[D]eliberative process" thus "covers 'documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated.'" *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001). As the Governor's Office notes, that means that the material at issue must be both "predecisional" and "deliberative." Mot. 11.

The deliberative process privilege is usually invoked with respect to draft *documents*, not deposition testimony. *See Dep't of Interior*, 532 U.S. at 8. In addition to failing to failing to cite any authority blocking a deposition in advance on the basis of deliberative process, the Governor's Office fails to explain how any of the topics—which ask for the Governor's Office actual opinions, not tentative opinions—would necessarily or exclusively involve questions

about predecisional, deliberative materials. None of the topics on their face ask for any information that is predecisional or deliberative. Thus, for example, Topic 1 asks about the state interests that the Governor's Office believes S.B. 90 promotes—not about internal predecisional deliberations about what state interests *might* be invoked to support S.B. 90. Topic 2 asks about the Governor's Office "statements and opinions" concerning the conduct of the 2020 general election. Nor does anything about that topic request information that is predecisional or deliberative. The same is true of the rest of the topics.

Despite moving to quash the entire deposition on grounds of deliberative process, in its brief the Governor's Office only contends that four out of the eleven topics implicate deliberative process. Mot. 11-12. But none of them do. The Governor's Office notes that Topic 4 concerns, among other things, the Governor's Office's "opinions" about "potential" changes to Florida election law and policy. But this information would not be predecisional or deliberative; the topic asks for the Governor's Office's opinions, *i.e.*, conclusions. Discussion of *potential conclusions* might be deliberative; but an actual conclusion about whether the Governor's Office will support a potential change to the law is not. The Governor's Office also points to Topics 7, 8, and 9, which ask for the Governor's Office's "analysis" about the effects of S.B. 90, about the costs of S.B. 90, and about the need for S.B. 90. But the Governor's Office fails to explain how that request implicates subjects that are predecisional *or* deliberative, especially given that this deposition will be taken *after* the relevant decisions (such as supporting S.B. 90) were made. For example, Plaintiffs might ask under Topic 7 whether S.B. 90 will have the effect of reducing access to mail voting, or whether aspects of S.B. 90 will have a racially disparate impact. That is not deliberative.

Ultimately, the Office's "speculation that [Plaintiffs] will seek information protected by the deliberative process privilege is no basis for blocking" a deposition. *Brush v. Sears Holdings Corp.*, 2010 WL 11558010, at *2 (S.D. Fla. Sept. 2, 2010). The Governor's Office does not even come close to carrying its burden on deliberative process privilege.

## III. The Subpoena Was Timely Sent and Does Not Impose an Undue Burden

The Governor's Office's timeliness and burden arguments are equally meritless. Indeed, the "Government has not presented an affidavit or other evidence in support of its claim of undue burden," which "alone is a basis to reject the Government's claim." *United States v. 3M Co. (3M Combat Arms Earplug Prods. Liab. Litig.)*, No. 3:19-md-2885, 2020 U.S. Dist. LEXIS 230043, at *16 (N.D. Fla. Dec. 8, 2020).

Plaintiffs noticed the deposition on October 6, 2021, two weeks in advance of the October 20 date, and advised the Governor's Office that a later date (October 21 or 22) would be possible too. Ex. D at 6. The Governor's Office does not cite a single decision, of any court, concluding that two weeks is not "reasonable written notice" within the meaning of Rule 30(b)(1), and the local rules of many federal courts provide 14 days (or less) is sufficient notice. *See, e.g.*, M.D. Fla. Local Rule 3.04 ("A deposition by oral examination or written questions and a subpoena duces tecum require fourteen days' written notice.").[2] With the delay achieved through filing the present motion, the Governor's Office will have even more time to prepare. And "reasonableness" should be assessed in light of all the circumstances, including the fact that the Secretary of State's counsel—who are representing the Governor's Office in this motion—provided much less time than fourteen days when they issued 30(b)(6) topics to Plaintiffs. For

[2] https://www.flmd.uscourts.gov/sites/flmd/files/local_rules/flmd-united-states-district-court-middle-district-of-florida-local-rules.pdf

example, notice of the 30(b)(6) topics for Plaintiff Florida Rising was provided by defense counsel on October 14, three business days before the October 20 deposition.

Nor does the Governor's Office explain how the various case scheduling dates it references renders the amount of notice not "reasonable." Mot. 13. Plaintiffs noticed the deposition for October 20, 2021, two days before fact discovery concluded. Many other parties, including defense counsel, noticed depositions for that week as well.

Plaintiffs' October 14 amended notice added the 11th topic concerning the University of Florida's efforts to prevent Plaintiffs' experts from testifying in this case on the ground of a "conflict of interest" with the "executive branch." As noted, Plaintiffs noticed this topic promptly after learning of the factual predicate for it. Plaintiffs' expert Dan Smith advised Plaintiffs' counsel of the University's disapproval because of perceived adversity against "the executive branch of the State of Florida" on October 11, and expert Michael McDonald was advised of the University's disapproval on October 13. Ex. E. Plaintiffs served an amended notice adding a question about this issue on October 14. Subsequently, Plaintiffs' expert Sharon Austin was advised of the University's disapproval on October 15, 2021. Ex. E. So this topic is plainly timely.

The Governor's Office next contends, in support of its burden argument, that it is engaged in other litigation and has other responsibilities, such as preparing for a legislative session that will begin over two months from now on January 11, 2022. Mot. 13. It is always the case that witnesses, including government witnesses, have other responsibilities, and the Governor's Office does not explain how such garden-variety obligations could render a 30(b)(6) deposition an undue burden when the rule itself expressly authorizes depositions of a "governmental agency." Fed. R. Civ. P. 30(b)(6).

The Governor's Office also argues that Plaintiffs "could have sent the subpoena sooner" because certain documents were produced in July 2021 and because some of the topics involve statements from 2020. Mot. 14. But Plaintiffs (counsel for the League of Women Voters on behalf of the Plaintiffs) first raised the need for a deposition with defense counsel (who is representing the Governor) on a call September 8, and reached out directly to the Governor's office on September 14. Ex. F. Moreover, Plaintiffs are entitled to set their own schedule and strategy for discovery. A significant amount of discovery that will bear on the topics and questions for the Governor's Office was produced or occurred in October, including document productions from the Secretary of State and deposition testimony from supervisors of elections about drop box issues. And the two cases the Governor's Office cites in support of this argument are, to put it mildly, irrelevant. One involves a motion for disqualification. *Ransburg Corp. v. Champion Spark Plug Co.*, 648 F. Supp. 1040, 1047 (N.D. Ill. 1986). In the other, the court explained that a litigant who had taken an expert deposition *too early* in the discovery period did not get a second bite at the apple after receiving more documents. *Austin v. Public Reputation Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 172968, at *7-10 (S.D. Fla. Sept. 22, 2020).

The Governor's Office finally argues that the topics are too broad. Mot. 15. But during the parties' meet and confer, the Governor's Office only objected to the breadth of a single topic, Topic 6. Plaintiffs invited the Governor's Office to propose ways to narrow the topic and the Governor's Office did not respond. *See* Ex. D. Moreover, during the parties' meet-and-confer, over a week after the deposition was noticed, the Governor's Office advised that it had not even identified a corporate representative or made any effort to begin preparation.

In any event, the noticed topics, including Topic 6, are not overbroad: they are all narrowly tailored to the issues in this litigation, namely S.B. 90 and the 2020 election in Florida.

Topic 6 asks about the Governor's Office's communications with third parties relating to the bill that is the subject of this lawsuit. Absent a privilege, that topic is clearly appropriate. Similarly, the Governor's Office's statements concerning the "conduct of the 2020 general elections in Florida"—which would not include statements about specific candidates, for example—is a topic that is narrowly tailored to the needs of this case. The Governor's Office also objects to the fact that the deposition might involve the "[o]ver 700 pages of documents" it produced, Mot. 15, but that is really a tiny number in the context of significant litigation like this (*e.g.*, the Secretary of State has produced almost 7 million pages), and many pages of the Governor's production are non-substantive.

The cases the Governor's Office cites in support of its burden argument do not advance its position. In *Reed v. Bennett*, 193 F.R.D. 689 (D. Kan. 2000), the subpoena was only overbroad because the topic list had stated that the "areas of inquiry will 'includ[e], but not [be] limited to' the areas specifically enumerated." *Id.* at 692. Plaintiffs here have done no such thing. In *Beaulieu v. Board of Trustees of University of West Florida*, 2007 U.S. Dist. LEXIS 108191, at *14–15 (N.D. Fla. Oct. 4, 2007), the Plaintiff included topics such as her "entire complaint" and filed to identify any topic with "particularity." And in *Martin v. I-Flow Corp.*, 2008 U.S. Dist. LEXIS 133976 (N.D. Fla. Dec. 4, 2008), the court merely held that a defendant could not issue a 30(b)(6) notice to its *own* representative early in discovery and require the plaintiff to take the defendant's deposition on that date before it had a chance to review documents produced in discovery. *Id.* at *7-8.

Although the Governor's Office has failed to meet its burden to substantiate its burden and overbreadth arguments, to the extent the Court agrees as to any particular topic, the proper

remedy would be to require the parties to meet and confer to narrow that topic for deposition, not to quash the subpoena.

## CONCLUSION

For the foregoing reasons, this Court should deny the motion to quash.

Dated: October 29, 2021

Respectfully submitted,

s/ *Kira Romero-Craft*
KIRA ROMERO-CRAFT
Florida Bar No. 49927
MIRANDA GALINDO*
LatinoJustice, PRLDEF
523 W Colonial Dr.
Orlando, FL 32804
(321) 418-6354
Kromero@latinojustice.org
Mgalindo@latinojustice.org

BRENDA WRIGHT*
DEMOS
80 Broad St, 4th Flr
New York, NY 10004
(212) 633-1405
bwright@demos.org

JUDITH BROWNE DIANIS**
GILDA R. DANIELS
JORGE VASQUEZ**
SABRINA KHAN**
ESPERANZA SEGARRA
Florida Bar No. 527211
SHARION SCOTT**
ADVANCEMENT PROJECT
1220 L Street, N.W., Suite 850
Washington, DC 20005
(202) 728-9557
Jbrowne@advancementproject.org
Gdaniels@advancementproject.org
Jvasquez@advancementproject.org
Skhan@advancementproject.org
Esegarra@advancementproject.org
Sscott@advancementproject.org

JOHN A. FREEDMAN*
JEREMY C. KARPATKIN
ELISABETH S. THEODORE*
JANINE M. LOPEZ*
LESLIE C. BAILEY*
SAM I. FERENC*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, D.C. 20001-3743
202-942-5000
John.Freedman@arnoldporter.com
Jeremy.Karpatkin@arnoldporter.com
Elisabeth.Theodore@arnoldporter.com
Janine.Lopez@arnoldporter.com
Leslie.Bailey@arnoldporter.com
Sam.Ferenc@arnoldporter.com

JEFFREY A. MILLER*
Arnold & Porter Kaye Scholer LLP
3000 El Camino Road
Five Palo Alto Square, Suite 500
Palo Alto, CA 94306-3807
(650) 319-4500
Jeffrey.Miller@arnoldporter.com

AARON STIEFEL*
DANIEL R. BERNSTEIN*
RYAN D. BUDHU*
ANDREW R. HIRSCHEL*
Arnold & Porter Kaye Scholer LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
Aaron.Stiefel@arnoldporter.com
Daniel.Bernstein@arnoldporter.com
Ryan.Budhu@arnoldporter.com

Andrew.Hirchsel@arnoldporter.com

*Attorneys for Plaintiffs*
**Admitted pro hac vice*

***Application for admission pro hac vice forthcoming*

**LOCAL RULE 7.1(F) CERTIFICATION**

Pursuant to Local Rule 7.1(F), this memorandum contains 5,507 words, excluding the case style, table of authorities, table of contents, signature blocks, and certificate of service.

s/ *Kira Romero-Craft*
Attorney for Plaintiffs

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of this document was served on all counsel of record through the Court's CM/ECF system on the 29th of October, 2021.

s/ *Kira Romero-Craft*
Attorney for Plaintiffs